UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-418-RGJ

JONAH ALBERT                                                                                      Plaintiff

v.

UNKNOWN INDIVIDUAL LOUISVILLE                                                     Defendants
METRO POLICE OFFICERS, et al.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Jonah Albert ("Albert") alleges violations of state and federal law against Defendants Louisville-Jefferson County Metro Government ("Louisville Metro"), Greg Fischer ("Fischer"), Mayor of Louisville, and Unknown Kentucky State Police Officers ("Unknown KSP Officers") and Unknown Louisville Metro Police Officers ("Unknown LMPD Officers") (collectively, "Unknown Officers"). [DE 14]. Defendants move to dismiss the claims against them. [DE 7; DE 8; DE 15; DE 23]. Unknown KSP Officers move to strike Albert's amended complaint. [DE 17]. Albert moves for expedited discovery. [DE 29]. Briefing is complete and the matter is ripe. [DE 13; DE 18; DE 19; DE 31; DE 36; DE 37; DE 38]. For the reasons below, Unknown LMPD Officers' Motion to Dismiss [DE 7] is **DENIED AS MOOT**, Unknown KSP Officers' First Motion to Dismiss [DE 8] is **DENIED AS MOOT**[1], Unknown LMPD Officers' Motion to Withdraw Motion to Dismiss and Withdraw as Counsel [DE 13] is **DENIED** at this

---

[1] Unknown KSP Officers filed their first motion to dismiss before Albert amended his complaint. Because his amended complaint is now the operative pleading, their motion to dismiss based on his complaint is moot. *See Kentucky Press Ass'n, Inc. v. Kentucky*, 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005) ("Plaintiff's amended complaint supersedes the original complaint, thus making the motion to dismiss the original complaint moot").

1

time, Unknown KSP Officers' Motion to Strike [DE 17] is **DENIED**, Unknown KSP Officers' Notice of Withdrawal of Motion to Strike [DE 19] is **GRANTED**, Unknown KSP Officers' Second Motion to Dismiss [DE 15] is **GRANTED IN PART, DENIED IN PART**, Louisville Metro's and Mayor Fischer's Motion to Dismiss [DE 23] is **GRANTED IN PART, DENIED IN PART**, and Albert's Motion For Leave to Take Early Rule 30(b)(6) Deposition of Defendant Louisville-Jefferson County Metro Government [DE 29] is **GRANTED**.

## I.  BACKGROUND

On the evening of May 30, 2020, Albert "was an unarmed protester peacefully protesting" the deaths of Breonna Taylor and George Floyd "at the intersection of Cedar Street and South 6th Street in Louisville, Kentucky."[2] [DE 14 at 105]. Unknown Officers, armed and dressed in riot gear, had formed a barricade nearby. *Id.* As Albert walked by Unknown Officers, he said, "'I hope you guys have more drones' or words to that effect." *Id.* at 106. In response to Albert's comment, "Defendant Unknown LMPD Officer 1 or Unknown State Trooper 1 took aim directly at the back of the Albert's head and fired an object from a gun, thus, striking Plaintiff in the back of his head." *Id.* As Albert was "stumbling away, some of the said armed Unknown LMPD Officers and/or Unknown State Troopers were heard laughing and acknowledging the fact that the Plaintiff was shot in the back of the head." *Id.*

On June 10, 2020, Albert sued in this Court, asserting 42 U.S.C. § 1983 and state-law battery and excessive force claims. *Id.* at 110-14. In September 2020, Unknown LMPD Officers moved to dismiss the claims against them. [DE 7]. A few days later, Unknown KSP Officers also moved to dismiss. [DE 8].

---

[2] Albert filed a video recording of the incident in the record. [DE 28].

On October 2, 2020, counsel for Unknown LMPD Officers moved to withdraw the motion to dismiss and to withdraw as counsel from the case. [DE 13]. A few weeks later, Albert filed his first amended complaint. [DE 14]. The next day, Unknown KSP Officers filed its second motion to dismiss. [DE 15]. Unknown KSP Officers also filed—only to later withdraw it—a motion to strike Albert's amended complaint. [DE 17]. And in March 2021, Albert moved to take expedited discovery of Louisville Metro to determine the identities of the Unknown Officers. [DE 29].

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers*, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

### III. DISCUSSION

As an initial matter, counsel for Unknown LMPD Officers moves to withdraw their motion to dismiss and to withdraw from the case. [DE 13]. Counsel asserts that "after further review of the Complaint filed by the Plaintiff, the Plaintiff has failed to name any viable Defendants. The original motion was filed out of abundance of caution . . . Since there is no actual Defendant with whom to confer, the requirement to notify the client is moot." *Id.* at 96. Albert did not respond to this motion.

> Local Rule 83.6 provides:
>
> Unless a compelling reason exists, an attorney of record is not permitted to withdraw within twenty-one (21) days of trial or a hearing on any motion for judgment or dismissal. At any other time, an attorney of record may withdraw from a case only under the following circumstances:
>
> (a) The attorney files a motion, his or her client consents in writing, and another attorney enters his or her appearance; or
>
> (b) The attorney files a motion, certifies the motion was served on the client, makes a showing of good cause, and the Court consents to the withdrawal on whatever terms the Court chooses to impose.
>
> (c) In cases where an attorney seeks to be substituted for another as attorney of record, and both attorneys are within the same partnership or other legal professional association, a notice of substitution must be filed signed by the withdrawing attorney and the substitute attorney with an affirmative representation stating that the substitution is made with the client's consent; the notice may, but need not be, signed by the client.

First, Unknown LMPD Officers filed their first motion to dismiss before Albert amended his complaint. Because his amended complaint is now the operative pleading, their motion to

dismiss based on his complaint is moot. *See Kentucky*, 355 F. Supp. at 857 ("Plaintiff's amended complaint supersedes the original complaint, thus making the motion to dismiss the original complaint moot"). Second, counsel has not demonstrated good cause for withdrawal. If anything, counsel has demonstrated an attempt to game the system by filing a responsive pleading to Albert's complaint, requesting to withdraw it, implying that Unknown LMPD Officers were improperly served (even though he filed a motion to dismiss on their behalf), and requesting to withdraw from the case. The Court is allowing Albert to depose an agent of Louisville Metro to determine which officer shot him. Counsel may renew his motion to withdraw if he still believes it is necessary after Albert has taken the deposition, amended his complaint, and served individual defendants.

Unknown KSP Officers request to withdraw their motion to strike because they erred in filing it. [DE 19 at 179]. Hearing no objection from Albert, the Court grants Unknown KSP Officers' motion to withdraw their motion to strike.

That leaves three motions for the Court's consideration: Unknown KSP Officers' motion to dismiss, Louisville Metro's and Mayor Fischer's motion to dismiss, and Albert's motion for expedited discovery.

**A.     Motions to Dismiss**

    1. <u>Immunity</u>

Unknown KSP Officers argue that they are entitled to sovereign immunity from Albert's federal and state-law claims against them in their official capacities. [DE 15 at 122]. Albert does not respond to this argument.

       *a. Federal claims*

Under the Eleventh Amendment to the U.S. Constitution, a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity

or Congress has overridden it. *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). The Commonwealth of Kentucky has not waived its immunity, and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *See Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991). The Eleventh Amendment similarly bars the damages claims against state officials sued in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity"). As a result, the claims against Unknown KSP Officers, who are employees of the Commonwealth of Kentucky sued in their official capacities for monetary damages, are barred by Eleventh Amendment immunity. *See Burnett v. Martin*, No. CIV.A. 6:06-482-DCR, 2007 WL 3046066, at *2 (E.D. Ky. Oct. 16, 2007) ("[E]mployees of the KSP sued in their official capacities are entitled to the same Eleventh Amendment protection from federal claims").

Unknown KSP Officers when sued in their official capacities for monetary damages are not considered "persons" subject to suit under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (concluding that a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for the purpose of a § 1983 claim). As a result, the Court dismisses the § 1983 claims against Unknown KSP Officers in their official capacities.

### b. State-law claims

Under Kentucky law, political subdivisions of the Commonwealth are entitled to sovereign immunity. *Yanero v. Davis*, 65 S.W.3d 510, 525 (Ky. 2001). The doctrine of sovereign immunity extends to tort claims. *Univ. of Louisville v. Martin*, 574 S.W.2d 676, 677 (Ky. Ct. App. 1978) (citing *Foley Const. Co. v. Ward*, 375 S.W.2d 392 (Ky. 1963); *All-Am. Movers, Inc. v. Kentucky*

*ex rel. Hancock*, 552 S.W.2d 679 (Ky. Ct. App. 1977)). The Kentucky General Assembly has never expressly stated or otherwise suggested that it intended to waive sovereign immunity for tort claims against the government. Faced with such claims, courts have found that no waiver exists. *See, e.g.*, *Yanero*, 65 S.W.3d at 526 (noting that governmental subdivisions' immunity is grounded in the Kentucky Constitution and thus not waived); *Tinch v. Jefferson Cty. Pub. Sch. Sys.*, No. 3:12-CV-844-DJH, 2016 WL 1574149, at *4 (W.D. Ky. Apr. 19, 2016) (dismissing a defamation claim under Kentucky law because sovereign immunity had not been waived). "[W]hen an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled." *Yanero,* 65 S.W.3d at 522. Thus, Unknown KSP Officers are entitled to sovereign immunity for Albert's state-law claims. *See Davis v. Jones*, No. CIVA 4:06CV072 M, 2006 WL 2414512, at *3 (W.D. Ky. Aug. 17, 2006) ("As law enforcement is integral to state government, and as this motion pertains only to the state law claims asserted against the KSP employees in their official capacity, dismissal of only those claims is proper"); *Colebrook v. Kentucky Dep't of Motor Vehicle Enf't*, No. CIV. A. 08-110-DLB, 2009 WL 536600, at *8 (E.D. Ky. Mar. 3, 2009) ("Defendants Scott and unknown KSP Troopers are entitled to the protections of governmental immunity with respect to the state law claims asserted against them in their official capacities because at the time alleged by Plaintiff, each was employed in an official capacity by the KSP or KDMVE"). As a result, the Court dismisses the state-law claims against them in their official capacities.

  2. Failure to State a Claim

Louisville Metro and Unknown KSP Officers argue that Albert has failed to plausibly state a §1983 claim against them. Mayor Fischer argues that the claim against him in his official

capacity must be dismissed because it is "merely a claim against Louisville Metro itself." [DE 23-1 at 205]. Albert agrees that the claim against Mayor Fischer in his official capacity should be dismissed. [DE 31 at 285 ("Since Plaintiff has named [Louisville Metro] as a party asserting *Monell* claims against [Louisville Metro], Plaintiff concedes that those . . . claims as alleged against [Louisville Metro] and the Mayor in his official capacity are duplicative . . . and thus those said claims should be dismissed")]. As a result, the Court dismisses the claims against Mayor Fischer in his official capacity. *See Scott v. Louisville/Jefferson Cty. Metro Gov't*, No. 3:20-CV-535-CRS, 2020 WL 6946573, at *6 (W.D. Ky. Nov. 25, 2020) ("[S]ince Louisville Metro is named as a defendant in this case, the Court will dismiss Plaintiffs' official capacity claims against Fischer").

A plaintiff asserting a municipal liability claim under §1983 must allege that the federal violation occurred because of a municipal policy or custom. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). To properly assert a municipal liability claim, a plaintiff must sufficiently allege: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision[-]making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell,* 436 U.S. at 694.

      *a. Illegal official policy or custom*

To state a § 1983 claim for a municipal policy or custom, the plaintiff must "identify the policy, connect the policy to the [County] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993).

Unknown KSP Officers argue: "The Plaintiff has no idea which officer, if any, fired the 'object' at him, or even for which department such unknown officer may have worked. The facts assumed by the Plaintiff do not allow more than one person to have used force against him." [DE 15 at 125]. Louisville Metro similarly argues that "[r]ather than suing the officer who allegedly fired a shot at him – if it was indeed an officer, and indeed a fired shot – the Plaintiff has filed against 'Unknown State Troopers' and 'Unknown LMPD Officers.' These are simply insufficiently pled allegations that fail to establish a specific official *with* LMPD exercised unconstitutional, excessive force which can *then* possibly be attributed to Louisville Metro for purposes of municipal liability." [DE 36 at 313 (emphasis in original)]. Plaintiff, on the other hand, contends:

> In Plaintiff's Amended Complaint, Plaintiff has plausibly alleged that [Louisville Metro] has an illegal policy or custom for which it targeted innocent peaceful protesters and fire [sic] their weapons upon them in response for them lawfully gathering and engaging in free speech. Plaintiff also alleged that many event occurred in which the said Defendant targeted and shot innocent citizens for lawfully gathering and engaging in free speech.
>
> Plaintiff's allegations . . . also connect the policy or custom to the [Louisville Metro] officers conduct in targeting innocent peaceful protesters (e.g., Plaintiff) and firing their weapons upon them in response for them lawfully gathering and engaging in free speech. Plaintiff alleged that he was peacefully expressing his disapproval of police misconduct and that is when a "Unknown LMPD Officer 1 or Unknown State Trooper 1 took am directly at the back of the [his] and fired an object from a gun, thus, sticking [him] in the back of his head."

[DE 31 at 284-85].

The Court agrees with Albert. Albert has plausibly alleged that Louisville Metro had an illegal policy or custom of using unlawful force against protestors:

> 60. Upon information and belief, Defendants Fischer and City knew and, either explicitly, or through acquiescence, approved of LMPD's decision to use tear gas, flash bangs, pepper balls, batons, and other forms of force on peaceful protesters between May 28, 2020 and June 1, 2020.

> 61. The version of LMPD's Standard Operating Procedures that was in effect at the time required supervisors to be notified any time chemical agents, including pepper balls, were deployed.
>
> 62. LMPD's Standard Operating Procedures also required approval from a commanding officer prior to using any chemical agents, including pepper balls.
>
> 63. LMPD's conduct came under intense media scrutiny almost immediately. But Defendants Fischer or the City have done nothing to correct LMPD's illegal course, instead acquiescing to LMPD's use of violent force on peaceful protesters.
>
> 64. Moreover, at least since June 30, 2020, there has been at least one class action suit filed asserting that the Defendant City usages of Immediate and egregious use of force by LMPD. See *Attica Scott vs. Officer Miller, Louisville/Jefferson County Metro Government, et. al.*, No. 3:20-cv-00535 (W.D. Ky.).
>
> 65. The Defendant City is involved in a conspiracy amounting to a common plan or design, i.e., custom, to: (a) to use unlawful and excessive force to cause a chilling effect on the First (1st) Amendment of the United State and Kentucky constitutions; (b) prevent individuals from communicating complaints of police misconduct, and (c) place fear among the citizens of the Commonwealth of Kentucky and the United States of America.
>
> 66. The common plan or design was used by Defendant Fisher to enforce his order to the people of the city of Louisville, in which he requested that the said people "stay home."
>
> 67. Defendant City has failed to properly train and supervise Defendant Unknown Officers, and have knowingly allowed the said Defendants to ignore while acting under the color of law the Constitutional rights of the Plaintiff and people alike.

[DE 14 at 108-109].

Albert has also plausibly alleged that he was injured by Unknown LMPD Officer 1 or Unknown State Trooper 1 because of Louisville Metro's custom or policy:

> 72. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.
>
> 73. The Defendant, Unknown LMPD Officer 1 or Unknown State Trooper 1, while acting, under color of law, and of their authority as police officers of the City of Louisville and/or the Commonwealth of Kentucky, as herein above set out, intentionally aimed a gun at the Plaintiff and intentionally shot the Plaintiff in the back of his head.

10

74. Plaintiff posed no immediate threat to the safety of the officers or others.

75.  Plaintiff was not actively resisting arrest nor attempting to evade arrest by flight.

76. The force used by the Defendants upon Plaintiff was excessive.

77. The Defendants, Fisher and City, authorized the unlawful custom and practice of using excessive force against the Plaintiff and peaceful and lawful protesters alike.

78.  As a result thereof, Plaintiff was injured, suffered great pain and anguish of body and mind, and was caused to be subject to expenses for medical attendance and nursing, therefore, the said Defendants, as herein above set out, deprived Plaintiff of the privileges and immunities guaranteed to Plaintiff as a citizen of the United States, by U.S. Const. Amend. 4 and U.S. Const. Amend. 14, § 1, to Plaintiff's damage in an amount in excess of the minimum dollar amount necessary to establish the jurisdiction of this court.

*Id.* at 110-111.

While it is true that Albert has not yet identified the officer who shot him by name, his inability to do so does not require dismissal of his claims.  Based on his allegations, especially his claim that he heard officers "acknowledging the fact that [he] was shot in the back of the head" and "laughing" about it, it is plausible that one of the officers who was there that day, dressed in riot gear, and part of the barricade, acted in accordance with Louisville Metro's alleged policy of using unlawful force against peaceful protestors by shooting him in the back of the head with a non-lethal projectile. [DE 14 at 106]; *see Scott v. Louisville/Jefferson Cty. Metro Gov't*, No. 3:20-CV-535-CRS, 2020 WL 6946573, at *5 (W.D. Ky. Nov. 25, 2020)  (finding it plausible that plaintiffs' constitutional rights were violated because "[t]he complaint contains numerous allegations of LMPD officers using tear gas, pepper balls, rubber bullets, batons, and other physical force against Plaintiffs and members of the Plaintiff Class who were, allegedly, 'peaceful and nonviolent protesters' and who  'did not disobey or refuse any police order.' Furthermore, Plaintiffs claim Defendants' conduct deterred Plaintiffs from participating in further

11

demonstrations"). Albert has sufficiently and specifically identified Unknown LMPD Officer 1 or Unknown State Trooper 1 as the person who shot him in the back of his head. *See Kealoha v. Espinda*, No. CV 16-00486 JMS/KJM, 2017 WL 741570, at *5 (D. Haw. Feb. 24, 2017) ("If the names of individual defendants are unknown at the time a complaint is filed, however, a plaintiff may refer to the unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege facts to support how each particular doe defendant violated his constitutional rights").

b. *Failure-to-intervene claim*

To state a § 1983 claim for a failure-to-intervene, the plaintiff must allege that the defendant "(1) observed or had reason to know that [constitutional harm] would be or was [taking place], and (2) had both the opportunity and the means to prevent the harm from occurring." *Sheffey v. City of Covington*, 564 Fed. App'x 783, 793 (6th Cir. 2014) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)) (internal quotation marks omitted). This is true regardless of whether the individual violating the plaintiff's constitutional rights is a fellow officer or a supervisor. *Smith v. Heath*, 691 F.2d 220, 224-26 (6th Cir. 1982). Defendants cannot be held liable, however, unless there was "a realistic opportunity to intervene and prevent harm." *Wells v. City of Dearborn Heights*, 538 Fed. App'x 631, 640 (6th Cir. 2013) (internal quotation marks and citation omitted).

Unknown KSP Officers argue that "[n]owhere in the Complaint is there the slightest evidence, express or implied, that a single 'Unknown State Trooper' or 'Unknown LMPD Officer' had any prior knowledge that any officer was about to use force against the Plaintiff, or that any officer saw it happening, or that any officer had any opportunity to intervene." [DE 15 at 125]. Plaintiff does not respond to this argument.

In support of his failure-to-intervene claim, Albert alleges:

>    92. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.
>
>    93. One or more of the Defendants, Unknown LMPD Officers 1-25 and Unknown State Troopers 1-25 had a reasonable opportunity to prevent the other Defendant Unknown LMPD Officer 1 or Unknown State Trooper 1 —had they been so inclined but they failed to do so— from depriving Plaintiff the following: (a) unnecessary, unreasonable, excessive and/or deadly force resulting in a violation of Plaintiff's rights under 42 U.S.C.A. § 1983; (b) to be free from punishment and the deprivation of life and liberty without due process of law, and to be free from deliberate indifference to all of those rights under the Fourth and Fourteenth Amendments to the United States Constitution; (c) freedom from the chilling effect of free speech; and (d) the freedom to move about freely as a citizen of the United States of America.
>
>    94. As a result of the said Defendants' failure to intervene, Plaintiff suffered physical injury to his person and emotional distress, and was humiliated and embarrassed.
>
>    95. The misconduct described in this Cause was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the rights of the Plaintiff.
>
>    96. The misconduct described in this Cause was undertaken by the said Defendants within the scope of their employment and under color of law such that their employer, Louisville-Metro Government and/or the Commonwealth of Kentucky, is liable for their actions.

[DE 14 at 113-14].

Plaintiff has failed to sufficiently state this claim against Unknown KSP Officers. Plaintiff has failed to plausibly allege that Unknown KSP Officers "had reason to know of the impending excessive force or had the opportunity or means to intervene." *Amerson v. Waterford Twp.*, 562 F. App'x 484, 490 (6th Cir. 2014) (affirming dismissal of failure-to-intervene claim). Indeed, based on the allegations, which involve an officer firing a non-lethal projectile by pulling a trigger, it is unclear how an Unknown KSP Officer could have prevented Unknown LMPD Officer 1 or Unknown State Trooper 1 from firing the projectile when the incident likely occurred over no more than a few seconds. *Id.* ("[T]he span of time within which Mahoney should have perceived the

excessive force and developed and implemented an intervention strategy could not have been more than a few seconds. Mahoney had no opportunity to prevent the alleged use of force, given that the alleged events took place quickly and without any forewarning"); *Ontha v. Rutherford Cty., Tennessee*, 222 F. App'x 498, 506 (6th Cir. 2007) (collecting case) ("courts have been unwilling to impose a duty to intervene where, as here, an entire incident unfolds in a matter of seconds").

    3. FRCP 4(m)

Louisville Metro asserts[3] that Albert's claims against Unknown LMPD Officers must be dismissed under FRCP 4(m) because he has failed to serve them within 120[4] days of filing the Complaint. [DE 37 at 321 ("While Plaintiff claims he has served 'unknown officers with LMPD,' this is nothing more than a legal fiction . . . [I]t is simply unclear how one would even go about sufficiently serving someone who is 'unknown.' It certainly would not be achieved simply by mailing a certified letter and summons. The civil rules require more"). Albert does not respond to this argument.

"Although the naming of pseudonymous defendants is permissible where a plaintiff requires discovery to learn the true identities of the defendants, the plaintiff subsequently must amend the complaint to reflect the discovered identities and effect service on the named parties within the 90-day period set forth in Rule 4(m)." *Laporte v. City of Nashville*, No. 3:18-CV-00282, 2019 WL 845413, at *10 (M.D. Tenn. Feb. 21, 2019); *see* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order

---

[3] This issue was not initially raised in Louisville Metro's motion to dismiss and Albert has not responded to it. Indeed, counsel for Louisville Metro first made this argument in his response to Albert's motion for expedited discovery. The Court is also somewhat confused why Louisville Metro is raising this argument on behalf of Unknown LMPD Officers. Even so, the Court will consider this argument now.

[4] FRCP 4(m) was amended in 2015 to reduce the presumptive time for serving a defendant from 120 days to 90 days.

that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period").

Albert neither amended his complaint to "reflect the discovered identities" nor served the discovered named parties within the 90-day period. Albert apparently has not done so because he has not yet discovered who they are. Because Albert did not respond to Louisville Metro's 4(m) argument, he has failed to show good cause for his failure to comply with it. And the Court declines to make that argument for him. That said, the Court will not dismiss his Amended Complaint because "the court has discretion to permit late service even absent a showing of good cause." *John W. Stone Oil Distrib., LLC v. PBI Bank, Inc.*, No. 3:09-CV-862-H, 2010 WL 3221800, at *1–2 (W.D. Ky. Aug. 12, 2010). When deciding whether to exercise discretion to extend time to serve defendants, courts consider whether: 1) a significant extension of time is required; (2 an extension of time would cause actual prejudice to the defendant other than the inherent prejudice in having to defend the lawsuit; 3) whether the defendant had actual notice of the lawsuit; 4) whether dismissal of the complaint without prejudice under Rule 4(m) would substantially prejudice the plaintiffs, *i.e.,* cause the plaintiffs' suit to be time-barred by the statute of limitations; and 5) whether the plaintiffs have made diligent, good faith efforts to effect proper service of process. *See Treadway v. California Prod. Corp.*, No. 2:13-CV-120, 2013 WL 6078637, at *6 (E.D. Tenn. Nov. 19, 2013).

As discussed below, the Court will allow Plaintiff to take expedited discovery. Therefore, he should be able to discover the officers' identities (if, in fact, they are discoverable) before the statute-of-limitations on his claims expires on May 30, 2021. *See Burnett v. Transit Auth. of Lexington-Fayette Urb. Cty. Gov't*, 981 F. Supp. 2d 630, 633 (E.D. Ky. 2013), *aff'd* (July 10, 2014) ("Where state law provides multiple statutes of limitations for personal injury actions,

15

courts considering § 1983 claims should borrow the general or residual statute for personal injury actions. In Kentucky, the statute of limitations for personal injury actions is one year") (internal quotation marks and citations omitted). Albert, thus, does not require a significant extension of time to discover the names of the officers who caused his injury. Unlike the first factor, the second factor does not necessarily weigh in his favor because the Court cannot definitively conclude that the fictious defendants had actual notice of the lawsuit. That said, it would not be unreasonable for Albert's counsel to believe that Unknown Officers had notice of the suit against them because counsel for Unknown LMPD Officers and counsel for Unknown KSP Officers filed motions to dismiss on their clients' behalf. Nor would it be unreasonable for Albert to believe that counsel presumably consulted with their clients before filing these motions.

The third and fourth factors weigh in Albert's favor. Louisville Metro has not argued that it will be prejudiced by an extension. Albert, however, will be prejudiced without an extension because his claims against Unknown Officers will be time-bared on May 30, 2021. Dismissing the claims against Unknown Officers without prejudice and forcing Albert to restart the case against them with little time remaining to identify the officers who caused his injury would substantially prejudice him. *See* Advisory Committee Notes to 1993 Revision of Rule 4(m) ("The new subdivision . . . authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown . . . Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action"). In addition, dismissing this case without prejudice only to have Albert immediately re-file it within the statute of limitations is a waste of the Court's resources and the parties' time. Thus, considerations of judicial economy are furthered by allowing Albert additional time to serve individual defendants.

Finally, while Albert could have been more diligent, his lack of alacrity in discovering the identifies of Unknown Officers does not merit a dismissal. As noted above, by appearing before the Court and filing response pleadings, Unknown Officers certainly gave the Court and likely gave Albert's counsel the impression of being on notice of the claims and engaged in this case. Because three of the five factors weigh in his favor, the Court will allow Albert to file service 90 days from when he amends his complaint to substitute Unknown LMPD Officers and Unknown KSP Officer for named individual defendants.

**B.     Expedited Discovery**

Plaintiff moves for "leave from the Court to depose [Louisville Metro] for the purpose of ascertaining the identification of the law enforcement officer that shot Plaintiff and the other officers that were present at the scene on May 30, 2020, and thus failed to offer him any medical aid." [DE 29-4 at 257]. Plaintiff asserts that the "requested leave for early discovery may provide the names of the officers before the time specified in Rule 26(d) and the running of the statue [sic] of limitations, as to properly amend Plaintiff's Amended Complaint, by substituting the unknown name officers with the identified officers that were present on the scene when the plaintiff was shot." *Id.* Louisville Metro objects:

> First, there is no evidence to suggest the Defendants will destroy any requested discovery concerning the alleged facts here, assuming such discovery even exists. Second, to the extent that Plaintiff seeks to identify certain unknown officers, he has not demonstrated that identifying these defendants is necessary to advance this litigation . . . Third, while Plaintiff repeatedly claims the scope of his inquiry is narrow, the reality is that Plaintiff himself has alleged there are 25 unknown LMPD officers and 25 unknown KSP officers that may be liable for all or some of the actions alleged in this matter.

[DE 37 at 317].

Under Federal Rule of Civil Procedure 26(d)(1), a party may not typically seek discovery before the required Rule 26(f) conference. That said, parties may begin discovery before this

conference if the court authorizes them to do so upon a showing of good cause. Fed. R. Civ. P. 26(d)(1). "In this Circuit, district courts have found good cause for granting expedited discovery when there are allegations of copyright infringement, the identification of defendants is unknown, the discovery sought is limited in scope, and the discovery would substantially contribute to moving the case forward." *Versah, LLC v. Ul Amin Indus.*, No. 220CV12657TGBRSW, 2020 WL 7241053, at *6 (E.D. Mich. Dec. 9, 2020) (internal quotation marks and citation omitted). Generally, "the plaintiff should be given the opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Robinson v. Doe,* 2008 WL 5069249, at *2 (S.D.Ohio Nov.24, 2008) (internal quotation marks and citation omitted). "Courts consider several factors in determining if good causes exists, including: (1) the danger that the information sought will be lost or destroyed, (2) whether the discovery would substantially contribute to moving the case forward, and (3) the scope of the information sought." *Barrette Outdoor Living, Inc. v. Does*, No. 1:16 CV 914, 2016 WL 1588672, at *2 (N.D. Ohio Apr. 20, 2016).

Albert does not argue and it does not appear that there is a danger that the requested information will be lost or destroyed. The first factor, thus, does not weigh in Albert's factor. But the second and third factors do. Knowing the identities of the officers will substantially move the case forward because it will allow Albert to substitute Unknown Officers with specific individuals. As noted, without expedited discovery, there is a risk that the statute of limitations will run on § 1983 claims before he has chance to identify Unknown Officers. If Albert cannot discover the identifies of Unknown Officers before the statute of limitations expires, Albert's case against Unknown Officers cannot move forward at all because it will be time-barred. *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012) (Rule 15(c) "allows relation back for the mistaken

18

identification of defendants, not for defendants to be named later through 'John Doe,' 'Unknown Defendants' or other missing appellations"). Finally, the scope of the deposition is limited to information about the officers who were present at the intersection where Albert was injured. While Albert requests information about the identifies of numerous officers, Albert has limited it to officers at a specific geographic location, on a specific day, at a specific time, and depicted in a specific video:

> 1. The identification of every law enforcement unit and law enforcement officer whom were present at the intersection of Cedar Street and South 6th Street, in Louisville KY, on May 30, 2020, dressed in riot gear, crowd control gear, and uniform, as depicted in the video Plaintiff referenced in his Amended Complaint (DN 14). Said video is attached hereto.
>
> 2. The identification of every law enforcement unit and law enforcement officer whom were issued a riot/crowd control firearm, ammunition, uniform, and assigned to the intersection of Cedar Street and South 6th Street, in Louisville KY, on May 30, 2020, as depicted in the video Plaintiff referenced in his Amended Complaint (DN 14). Said video is attached hereto.
>
> 3. The identification of every law enforcement officer whom reported any instance of a discharge of an authorized firearm to their division/section/unit commander as to the date the Plaintiff was injured, as required by Louisville Metro Police Department ("LMPD"), pursuant to LMPD's Standard Operating Procedures ("SOP") number 4.13.14.

[DE 29-2 at 241-42].

 The deposition shall be conducted before May 29, 2021.

### IV. CONCLUSION

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

(1) Unknown LMPD Officers' Motion to Dismiss [DE 7] is **DENIED AS MOOT**.

(2) Unknown KSP Officers' First Motion to Dismiss [DE 8] is **DENIED AS MOOT**.

(3) Unknown LMPD Officers' Motion to Withdraw Motion to Dismiss and Withdraw as Counsel From Case [DE 13] is **DENIED** at this time.

(4) Unknown KSP Officers' Motion to Strike [DE 17] is **DENIED**.

(5) Unknown KSP Officers' Notice of Withdrawal of Motion to Strike [DE 19] is **GRANTED**.

(6) Unknown KSP Officers' Second Motion to Dismiss [DE 15] is **GRANTED IN PART, DENIED IN PART.**

(7) Louisville Metro's and Mayor Fischer's Motion to Dismiss [DE 23] is **GRANTED IN PART, DENIED IN PART.**

(8) Albert's Motion For Leave to Take Early Rule 30(b)(6) Deposition of Defendant Louisville-Jefferson County Metro Government [DE 29] is **GRANTED** consistent with this Opinion.

(9) After amending his complaint to add named individual defendants, Albert has 90 days to serve them.

Copies to:     Counsel of record